IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-185-D

| | |
|---|---|
| MARY GAGNIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-26 & 31). Plaintiff has filed a response to Defendant's motion (DE-34), and the time for filing any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE-33). For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-26) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-31) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") on October 4, 2007, alleging disability beginning June 20, 2007. (Tr. 17). Her claim was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ") who

determined that Plaintiff was not disabled in a decision dated December 22, 2009. *Id*. at 17-26. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on July 6, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-3. Plaintiff filed the instant action on October 11, 2011. (DE-5).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990).

However, before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See*, Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–440 (4th Cir. 1997).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. ' 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. ' 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. ' 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. ' 404.1520(e); 20 C.F.R. ' 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. ' 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had engaged in substantial gainful activity ("SGA") from June 20, 2007 through December 31, 2008. (Tr. 19-20). Thus, the ALJ proceeded with the sequential evaluation only with regard to the period beginning January 1, 2009. *Id.* at 20. At step two, the ALJ found that Plaintiff had the severe impairments of carpal tunnel syndrome, right trigger thumb, and bilateral hand dystrophy. *Id.* However, the ALJ determined that these impairments were not severe

enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id* at 21. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. *Id*. at 21. Specifically, the ALJ found that:

> as of January 1, 2009, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she must avoid ropes, ladders, and scaffolds but can perform other postural activities frequently. She can reach without limit; handle and finger less than occasionally with the left upper extremity but frequently with right upper extremity; lift less than ten pounds with her left upper extremity and ten pounds constantly with her right upper extremity; use her left upper extremity to help her right upper extremity, but in terms of positioning only, not for gripping or holding. She must avoid hazards, extreme temperatures, and vibrations.
>
> *Id*. at 21.

Although not specifically mentioned in her RFC finding, the ALJ later noted in her decision that Plaintiff was "marginally literate." *Id*. at 25. The ALJ then determined that Plaintiff was not capable of performing her past relevant work. *Id*. However, based on the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id*. at 25-26. Notably, the hypothetical question presented by the ALJ to the VE is not completely consistent with the ALJ's RFC findings. *Id.* at 21, 25, 58-62. Regardless, based on these findings the ALJ determined that Plaintiff was not under a disability through December 22, 2009. *Id*. at 26.

The ALJ's determination that Plaintiff was not disabled was based in part on her finding that Plaintiff engaged in SGA from June 20, 2007 through December 31, 2008. (Tr. 19-20). Specifically, the ALJ found:

> Because the claimant has not taken action to resolve the coverage question with the District Office of the Social Security Administration, the

undersigned is giving great weight to the records of the Social Security Administration [and] is finding that the claimant engaged in substantial gainful activity after the alleged onset date, June 20, 2007, through December 31, 2008 (20 CFR 404.1571, *et seq.*) There was no continuous 12-month period through December 31, 2008, during which the claimant did not engaged [sic] in substantial gainful activity.

There is evidence in the file, specifically the earnings record (Exhibit 2D), that shows the claimant engaged in work activity after the alleged onset of disability. Specifically, the claimant earned $14,780.00 in 2008.

In a letter dated October 30,2009, Ann Janicki, District Manager of the Star-News, reported that the newspaper route was previously in the claimant's name because she had a valid North Carolina driver's license but that, to the best of her knowledge, the route had always been the sole responsibility of her husband, Steve Gagnier. (Exhibit 13E) This letter is given little weight, as there is no evidence that the claimant or her husband have amended tax returns to correct this alleged error in earnings. It appears that the earnings in 2008 have been disputed as to the impact on the issue of disability, but not corrected as to the impact on quarters of coverage and earnings for purposes of determining proper payment of Social Security Benefits (disability or retirement).

The undersigned finds that the claimant continued her previous activities at or about the same level as prior to her alleged onset of disability where she had earning above the level of substantial gainful activity.

Because the evidence does not contain earning records for 2009, the undersigned is giving the claimant the benefit of the doubt, and assuming she had no earnings in 2009.

Based on the work activity discussed above, the claimant cannot establish "disability" through December 31,2008; however, for the period beginning January 1, 2009, the claimant has not engaged in disqualifying substantial gainful activity. Therefore, the sequential evaluation must proceed with respect to that period of time.

*Id.* at 19-20 (footnotes omitted).

Pursuant to 20 CFR § 404.1574, "[t]he amount of . . . [a claimant's] earnings from work . . . [a claimant has] done . . . may show that . . . [the claimant has] engaged in substantial gainful activity." 20 CFR § 404.1574. Thus, "[t]he regulations provide a presumption that if an

individual is earning at or above the substantial gainful activity dollar amount, such work would "ordinarily show that [she has] engaged in substantial gainful activity." Miller v. Astrue, 2011 WL 5526196, * 3 (D.S.C. Oct. 24, 2011)(quoting 20 C.F.R. § 404.1574)(brackets in original), *Report and Recommendation Adopted by*, Miller v. Astrue, 2011 WL 5526027 (D.S.C. November 14, 2011). However, the income guidelines of section 404.1574(b)(2) do not automatically disqualify a disability claim. On the contrary, "[t]his presumption of substantial gainful activity is not to be rigidly applied, and it may be rebutted." Payne v. Sullivan, 946 F.2d. 1081, 1083 (4th Cir. 1991). Thus, it would be inappropriate to base a finding of "no disability" solely on the fact that the claimant's earnings exceeded the relevant threshold. *Id.* In determining whether a claimant engaged in SGA "the Commissioner is required to consider other factors set forth in 20 C.F.R. § 404.1573, including 'the nature of the work, how well the claimant performs, whether the claimant is self-employed, and the time spent in work.'" Sprouse v. Astrue, 2011 WL 2441263, * 3(W.D.Va. June 13, 2011)(*quoting* Payne, 946 F.2d at 1083). Whether a claimant "required and received assistance from other employees in performing [her] work" should also be considered. 20 CFR § 404.1573.

Furthermore, Social Security Regulation 83-34 states:

> In determining whether a self-employed individual is engaging in SGA, consideration must be given to the individual's activities and their value to his or her business. Self-employment income alone is not a reliable factor in determining SGA . . . SGA determinations for self-employed persons are based on three tests, all of which must be considered before it can be established that the self-employed person is not or was not engaged in SGA.
>
> SSR 83-34. *See also*, 20 CFR § 404.1575.

Plaintiff argues:

> The ALJ failed to correctly assess the evidence regarding the "self-employment" earnings posted to Ms. Gagnier's earnings record under 20 C.F.R. §404.1575 and Social Security Ruling 83-34 in determining whether Ms. Gagnier had engaged in SGA. Tr. pp. 151. Even if the posted earnings were properly attributed to Ms. Gagnier, the ALJ was obligated to undertake further analysis in determining whether Ms. Gagnier's activities amounted to SGA. It is not simply a matter of pulling the dollar amounts off of the claimant's earnings record. Tr. pp. 19-20. The evidence shows that Ms. Gagnier was receiving "unpaid help furnished by family members," a factor that Social Security Ruling 83-34 directs an ALJ to consider in determining the amount of Ms. Gagnier's "countable income."
>
> (DE-27, pg. 11).

The undersigned agrees. Although the ALJ discussed the weight given to the October 30, 2009 letter, there is no indication that she specifically considered any of the other factors which may have rebutted the presumption of SGA. *See*, Sprouse, 2011 WL 2441263, * 4 (ALJ "must consider the factors set forth in 20 CFR § 404.1573, in conjunction with the earnings guidelines, in determining whether the plaintiff engaged in [SGA]"); Miller, 2011 WL 55266196, * 4 (Because ALJ failed to mention factors listed in 20 C.F.R. § 404.1573, court was "unable to conclude whether the ALJ's decision was supported by substantial evidence and reached through the correct legal standard"). Furthermore, this error cannot be deemed harmless. *See*, Shinseki v. Sanders, 129 S.Ct. 1696 (2009); Garner v. Astrue, 2011 WL 2451723, *1, fn* (4th Cir. 2011)(unpublished opinion).

Defendant argues that "[t]he ALJ found the Plaintiff not disabled from the time of her alleged onset date in June 2007 . . . [and t]herefore, the dispute created by the Plaintiff about whose earnings are shown on her earnings record is not important to the outcome of this case." (DE-32, pg. 13). Moreover, Defendant contends that "[t]he finding by the ALJ that [Plaintiff] engaged in substantial gainful activity . . . is not the reason she was found not disabled . . . [i]t is the medical and vocational evidence that directs a finding of not disabled." *Id.* This argument

misstates the record. The ALJ clearly noted that she only proceeded with the sequential evaluation with regard to the time period beginning January 1, 2009. (Tr. 19). Indeed, her RFC finding only addresses the period beginning January 1, 2009. *Id*. at 21. Accordingly, this matter should be remanded for additional findings with regard to Plaintiff's SGA. *See*, Sprouse, 2011 WL 2441263, * 4; Miller, 2011 WL 55266196, * 4.

Reconsideration of Plaintiff's SGA may affect the subsequent steps of the sequential evaluation. Therefore, the undersigned need not address Plaintiff's remaining issues, as they may be rendered moot on remand. Miller, 2011 WL 5526196, * 5. Nonetheless, the undersigned notes that other portions of the ALJ's analysis were not supported by substantial evidence. Specifically, in her hypothetical to the VE the ALJ did not limit Plaintiff to less than occasional use of her hands. (Tr. 57-62). However, in her decision the ALJ specifically stated that Plaintiff could "handle and finger less than occasionally with the left upper extremity . . ." *Id*. at 21. Defendant concedes that the ALJ's decision to include this limitation in her RFC determination, yet not include it in her hypothetical to the VE, is "puzzling." (DE-32, pg. 19). Likewise, Defendant concedes that it "may be a mistake" which "complicates the decision by including a limitation on the use of the left hand that was not part of the hypothetical questions." *Id.*

In addition, the ALJ's hypothetical to the VE noted that Plaintiff was "marginally literate." (Tr. 58). Defendant concedes that the term "marginally literate" is "not defined." (DE-32, pg. 20). Furthermore, the "marginally literate" limitation is not included in the ALJ's RFC finding, although she does ascribe Plaintiff this limitation elsewhere in her decision. (Tr. 21, 25). Regardless, the VE testified that, if Plaintiff were "marginally literate", she would not be able perform the requirements of a surveillance system monitor. *Id.* at 62. Surveillance

system monitor is the position the ALJ relied upon in determining that Plaintiff could perform jobs that exist in significant numbers in the national economy.[1] *Id.* at 26. Thus, it appears that the ALJ's findings were not supported by the testimony of the VE.

An ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Koonce v. Apfel, 1999 WL 7864, * 5 (4th Jan. 11, 1999)(unpublished opinion). The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. March 13, 2000). Here, the ALJ's hypothetical does not match her RFC findings. Moreover, Defendant concedes that the ALJ's findings: 1) were "puzzling"; 2) lacked definition; 3) "may be . . . "mistake[n]"; and 4) are "uncertain". (DE-32, pg. 19-20). Furthermore, the ALJ's findings are not supported by the testimony elicited from the VE. In this posture, the undersigned cannot find that the ALJ's decision was supported by substantial evidence.

For each of these reasons, this matter should be remanded for further administrative action.

---

1 Defendant states that the ALJ's decision is "uncertain" as to whether Plaintiff could also perform other jobs. (DE-32, pg. 20).

**Conclusion**

For the reasons discussed above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-26) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-31) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the foregoing directives.

DONE AND ORDERED in Chambers at Raleigh, North Carolina on Friday, July 27, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE